**IT IS ORDERED as set forth below:**



Date: **March 15, 2019**

_____

**W. Homer Drake
U.S. Bankruptcy Court Judge**

_____

**UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION**

| **IN THE MATTER OF:** | : | **CASE NUMBER** |
|---|---|---|
| OAKLEY GRADING AND, PIPELINE, LLC, | : | 18-10743-WHD |
|  | : | IN PROCEEDINGS UNDER |
|  | : | CHAPTER 11 OF THE |
| Debtor. | : | BANKRUPTCY CODE |

**ORDER ON MOTIONS TO CONVERT**

Before the Court are the Motions to Convert (hereinafter the "Motions") filed by Jamie Hughes, Jonathan Hughes, David Hughes, JDH Group and Hughes Company, Inc. (hereinafter collectively the "Movants") in the above styled bankruptcy proceeding of Oakley Grading and Pipeline, LLC (hereinafter the "Debtor" or "OGP"). (Dkt. No. 102 & 111). The Chapter 11 Trustee (hereinafter the "Trustee") opposes the Motions. These matters constitute core proceedings, over which this Court has subject matter jurisdiction.

*See* 28 U.S.C. § 157(b)(2)(A); § 1334.

The Motions came before the Court for an evidentiary hearing and legal argument on February 19, 2019. After considering the pleadings, presentations of counsel, evidence, and any judicially noted facts, the following constitutes the Court's findings of fact and conclusions of law.

## Findings of Fact and Procedural History

A. Background

OGP is a member-managed limited liability company, organized in Georgia, that performs grading and excavation work. The members of OGP are Joseph Oakley (hereinafter "Oakley"), who holds a 50% membership interest, and Jamie and Jonathan Hughes (hereinafter the "Hughes Brothers"), each of whom holds a 25% membership interest. From the outset, Oakley managed the operations of OGP, including overseeing the grading and excavation work and obtaining contracts, while the Hughes Brothers, along with their father, David Hughes, and his company, Hughes Company, Inc. (hereinafter the "Hughes Co."), oversaw OGP's administrative functions and financial records, including accounting and payroll. OGP's records were maintained at the Hughes Co.'s office.

On May 8, 2017, Oakley initiated a proceeding in the Superior Court of Henry County against the Hughes Brothers and Amber Eubanks, a secretary who worked for OGP in a limited capacity, but was employed primarily by the Hughes Co. This action was based

2

on allegations that the Hughes Brothers and Ms. Eubanks, *inter alia*, misappropriated OGP's assets by directing the payment of $500,000 to the Hughes Co., paying approximately $64,000 to Ms. Eubanks, and paying approximately $175,000 in credit card expenses for the benefit of Hughes' family members and other persons.  Shortly after filing of the action, the Superior Court of Henry County, upon Oakley's request, appointed a Receiver (hereinafter the "Receiver") to take over OGP's operations and business.

In October of 2017, David Hughes, JDH Group,[1] and the Hughes Co. each filed separate actions against OGP in the Superior Court of Spaulding County, seeking recovery against OGP on several grounds, including: an alleged promissory note; breach of contract; and various unjust enrichment claims.

On April 9, 2018, the Receiver, considering the pending litigation, the financial strain caused by litigation in multiple venues, and the fractured relationships of OGP's members, found it to be in the best interest of OGP to file for relief under Chapter 11 of the Bankruptcy Code.  Together with the Chapter 11 petition for relief, the Receiver also filed a Motion to Appoint a Trustee, (Dkt. No. 6), which came before the Court for hearing on April 17, 2018.  At the conclusion of the hearing, the Court, considering the litigation surrounding the Debtor and the allegations of member misconduct, found the Debtor in need of oversight and governance by a neutral third party, which necessitated the

---

1 JDH Group is a business associated with or owned by David Hughes

3

appointment of a Chapter 11 Trustee. On April 24, 2018, Theo Mann was appointed the Chapter 11 Trustee (hereinafter the "Trustee").

In June of 2018, the Trustee removed the pending Superior Court proceedings and filed them as adversary proceedings in this Court. As a result, there are four (4) adversary proceedings involving the Trustee, Oakley, the Hughes Brothers, David Hughes, JDH Group and the Hughes Co. pending before the Court,[2] all of which center around allegations of financial misconduct by the Movants, breach of contract by the Debtor, and other related unjust enrichment claims.

B. Motions to Convert and the Trustee's Opposition

On January 17, 2019, the Hughes Brothers filed their Motion to Convert to Chapter 7, (Dkt. No. 102), and on January 30, 2019, JDH Group, the Hughes Co. and David Hughes filed a Motion to Convert to Chapter 7. (Dkt. No. 111). On February 7, 2019, the Trustee filed his response to the Motions, and the matter came before the Court for hearing on February 19, 2019.

The Movants assert that cause for conversion exists because of a continuing loss to or diminution of the estate, and that there is no reasonable likelihood of rehabilitation. The Movants submit that the Trustee is uninformed as to the workings of the Debtor,

---

2 *See* Adv. Proc. 18-1016-whd, Dkt. No. 3 (directing consolidation of Adversary Proceedings 18-1016, 18-1017, 18-1018, and 18-1019).

4

specifically as to its equipment usage and maintenance, and that this negligence is causing diminution of the estate.  In support of this assertion, the Movants rely on the testimony provided by David Hughes during the February 19th hearing, in which he described his inspection of the Debtor's equipment, which revealed that the equipment either does not have functioning Hobbs meters, a device designed for measuring equipment usage, or that the equipment simply lacks this meter altogether.  He testified further that there are numerous pieces of equipment that show either damage, neglect, or are inoperable.  The Movants also point out that a different grading company, owned by Oakley's brother, operates out of same location as the Debtor.  Given these facts, the Movants contend that the Trustee cannot determine if equipment belonging to the Debtor is being used on non-Debtor jobs.  Furthermore, the Movants maintain that the Trustee's determinations as to the profitability of the Debtor's contracts do not consider equipment usage, depreciation, and maintenance related cost.

In addition, the Movants assert that ever increasing administrative fees are causing diminution to the estate, and fees that may result from the litigation of the adversary proceedings could render the estate administratively insolvent.

The Movants also contend that there is no reasonable likelihood of rehabilitation, because the Trustee has neither filed a plan nor made any significant payments to satisfy the claims of pre-petition creditors, despite the case being in Chapter 11 for ten (10) months.

5

Moreover, the Movants maintain that conversion is appropriate because the parties favoring conversion include the 50% equity holders of the Debtor, the Hughes Brothers, and that the Movants hold more than half of the filed debt in the case.  They believe that liquidation of the business is inevitable due to Oakley's and the Hughes' unwillingness to continue business relations with one another.

The Trustee, in response, asserts that the monthly operating reports filed with the Court rebut the Movants' contentions regarding loss or diminution of the estate and reflect a financially stable business with potential for reorganization.  The Trustee also submits that not only is the Debtor completing pre-petition contracts, but that it is also acquiring new contracts, the most recent of which is worth approximately $500,000.

Addressing the Movants' allegations concerning misuse of the Debtor's equipment and its negligent maintenance, the Trustee relies on the testimony provided by Oakley at the hearing, during which he stated that there is no use of the Debtor's equipment by any entity other than the Debtor.  Oakley also testified that the equipment identified by David Hughes has not depreciated or been neglected, but that it was in its current state when purchased by David Hughes himself or the Hughes family.  Lastly, the Trustee maintains that there is a reasonable likelihood of rehabilitation, and that it is currently drafting a plan of reorganization, which will be funded by the Debtor's receivables and monies realized from the Trustee's claims against the Hughes.  Ultimately, the Trustee believes that this

6

action by the Movants is an attempt to delay the prosecution of his claims against the Hughes, and that the interests of the Movants are antithetical to the legitimate interests of other creditors.

The United States Trustee was also present at the hearing and voiced an objection to the Movants' Motions for conversion due to her belief that there exists a possibility of reorganization, and that the Trustee should be provided an opportunity to submit a plan or pursue different exit strategies.

## Conclusions of Law

Section 1112(b) provides the mechanism by which parties in interest can request dismissal of a Chapter 11 Case:

> Except as provided in paragraph (2) and subsection (c), on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate.

11 U.S.C. § 1112(b)(1). The Movants bear the burden of establishing cause by a preponderance of the evidence. *In re Brooks,* 488 B.R. 483, 489 (Bankr. N.D. Ga. 2013) (citing *In re Babayoff,* 445 B.R. 64, 76 (Bankr. E.D.N.Y. 2011)).

The Code contains a rebuttal provision, whereby the Court should not convert a Chapter 11 case, despite finding cause, if it finds and identifies (1) "unusual

circumstances" establishing that conversion is not in the best interest of creditors and the estate, and (2) the Debtor or another party in interest establishes the following:

> (A) there is a reasonable likelihood that a plan will be confirmed within the timeframes established in sections 1121(e) and 1129(e) of this title, or if such sections do not apply, within a reasonable period of time; and
>
> (B) the grounds for converting or dismissing the case include an act or omission of the debtor other than [substantial or continuing loss to or diminution of the estate and the absence of reasonable likelihood of rehabilitation]—
>
> (i) for which there exists a reasonable justification for the act or omission; and
>
> (ii) that will be cured within a reasonable period of time fixed by the court.

11 U.S.C. § 1112(b)(2). These sections delineate the burden of proof placed on the parties. *In re Brooks,* 488 B.R. at 489. The Movants must first establish cause by a preponderance of the evidence. *See* § 1112(b)(1). If the Movants establish cause, the burden shifts to the Trustee, who must establish both that unusual circumstances exist that justify continuance of the case in Chapter 11, and that the elements of 11 U.S.C. § 1112(b)(2)(A) & (B) are satisfied. *See* § 1112(b)(2).

Section 1112(b)(4) provides a non-exhaustive list of what constitutes cause. *In Roan Valley, LLC,* 2009 WL 6498188, *6 n.1 (Bankr. N.D. Ga.) (Drake, J.) (despite the Code's use of the conjunctive "and," the grounds listed for finding cause in § 1112(b)(4) are each separate justifications). "Cause" is a broad and flexible term, determination of

8

which is at the discretion of the Court. *In re Albany Partners, Ltd.,* 749 F.2d 670, 674 (11th Cir. 1984). "The [C]ourt will be able to consider other factors as they arise, and use its equitable powers to reach an appropriate result in [the] individual case." *Id.* (citing H. R. Rep. No. 595, 95 Cong., 1st Sess. 406 (1977), U.S. Code Cong. & Admin. News 1978, 5787, 6362).

A. Whether Cause Exists Pursuant to § 1112(b)(4)(A)

Pursuant to § 1112(b)(4)(A), cause for conversion exists if the movant establishes (1) "substantial or continuing loss to or diminution of the estate" post-petition, and (2) the "absence of a reasonable likelihood of rehabilitation." 11 U.S.C. § 1112(b)(4)(A). This is a two-fold inquiry; thus, the movant will fail if he does not satisfy either prong. *In re Global Emergency Res., LLC,* 563 B.R. 76, 80 (Bankr. S.D. Ga. 2016) (internal citations omitted); *In re Paterno,* 511 B.R. 62, 66 (Bankr. M.D.N.C. 2014).

1. Substantial or Continuing Loss to or Diminution of the Estate

First, the Court must determine whether, post-petition, there has been a substantial or continuing loss to or diminution of the estate. 11 U.S.C. § 1112(b)(4)(A); *In re Paterno,* 511 B.R. at 66. This prong is often met by showing that the debtor suffered or has continued to experience a negative cash flow or declining asset values following the entry of the order for relief. *Id.* The loss or decline in value must be either substantial or continuing, but need not be both. *Id.* In making this determination, courts

9

often look at the financial prospects of the debtor and the financial records filed with the court. The analysis, however, is not limited to these sources, as the Court must look beyond financial statements and fully evaluate the present condition of the Debtor's estate. *In re Vallambrosa Holdings, LLC,* 419 B.R. 81, 88 (Bankr. S.D. Ga. 2009).

Since the pendency of the case, the Trustee has satisfied his reporting obligations by submitting the Debtor's monthly operating disclosures to the Court. From April of 2018, the outset of the case, to August of 2018, the Debtor's monthly operating reports show that the value of cash on hand fluctuated between approximately $96,000, the highest value, and approximately $40,000, the lowest value. (*See* Dkt. No. 75, 76, & 80-1.) The Debtor's accounts receivables over this period show values above $1,000,000. *Id.* In September and October of 2018, the Debtor's cash on hand fluctuated around the $50,000 mark, and its accounts receivables decreased to approximately $980,000. (Dkt. No. 82 & 91). In November of 2018, cash on hand increased to approximately $115,000, and accounts receivables remained over $900,000. (Dkt. No. 97). The December monthly operating report shows $276,480.99 cash on hand and receivables in the amount of $725,729.48 ($59,817.66 of which is classified as "retainage"). (Dkt. No. 100). The January monthly operating report, the Debtor's most recent report,[3] shows $244,142.79 cash on hand and

---

3 A court may take judicial notice of its own docket. *Annis v. First State Bank of Joplin*, 96 B.R. 917, 920 (W.D. Mo. 1987)

receivables in the amount of $782,625.15 ($55,683.58 of which is classified as "retainage"). (Dkt. No. 139). These operating reports do not indicate continuing or substantial loss to the estate. In further support of this conclusion, the Court recognizes that the Debtor is not only collecting on already completed contracts, but has also recently acquired a new contract potentially worth $500,000.

However, analysis of these reports is not in itself enough, and the Court must address the Movants' concerns regarding depreciation of equipment, its potential misuse, and the impact that potential administrative expenses may have on the estate.

The Trustee does not deny failing to include the cost of equipment maintenance and depreciation into his calculations concerning the profitability of the Debtor's contracts. The Court agrees that inclusion of such information is likely appropriate; however, it does not find that the absence of this information negates the Debtor's profits in their entirety. At most, the profit margins presented by the Trustee require a limited downward adjustment, leaving the Debtor slightly less better off than presented, but not financially devasted or suffering to a degree that supports a finding of substantial or continuing loss to the estate.

As for the allegations of unauthorized use of the Debtor's equipment by Oakley's brother, the Court recognizes the dubiousness of this situation; but absent evidence to support this allegation and considering Oakley's testimony to the contrary, the Court finds

11

nothing more than speculation, which does not meet the preponderance of the evidence standard. The same applies to the Movants' concerns regarding administrative expenses. The possibility of substantial administrative expenses is no surprise given the litigious nature of this case. However, at this juncture, the Court will not convert the case due to administrative expenses that have not materialized in adversary proceedings that have just begun the discovery process. The Court is not inclined to micro-manage the Trustee's management of the estate, but instead believes it prudent to allow the Trustee to formulate and implement a litigation plan that he believes best serves the estate, subject to the objection of interested parties at the proper time.

In regard to the Movants' allegation concerning the depreciation of the Debtor's equipment, the Court is not persuaded by the Movants' argument. David Hughes testified that the equipment is in various states of disrepair or inoperable. This testimony is the cornerstone upon which the Movants' argument is based. However, the Court lends little credence to David Hughes' testimony in light of Oakley's contradictory testimony. Oakley does not controvert the equipment's condition, but he testified that the state of the equipment is not the result of mismanagement or neglect, but that it is due to having been purchased in that state by David Hughes and the Hughes family. Thus, it appears that David Hughes was aware of the condition of the equipment at the time of its purchase, or shortly thereafter.

David Hughes testimony misleads the Court in that his statements infer that the condition of the equipment was the result of the Trustee's and Oakley's negligence, when it appears that this is not the case. Consequently, the Court does not find that cause for conversion exists due to the depreciation of the Debtor's equipment.

Ultimately, the Court does not find a substantial loss to or continuing diminution of the estate. As a result, the Movants fail to satisfy the first prong of § 1112(b)(4)(A)'s two-part inquiry. Consequently, analysis of § 1112(b)(4)(A)'s second prong is not necessary. *See In re Paterno,* 511 B.R. 62, 66 (Bankr. M.D.N.C. 2014) (a movant must satisfy both prongs under § 1112(b)(4)(A)).

B. Whether Cause Exists Pursuant to § 1112(b)(4)(J)

The filing of a plan of reorganization is a requisite for the achievement of a successful Chapter 11 case, *In re Babayoff,* 445 B.R. at 76, and as such, a court should not allow a debtor to "wallow in Chapter 11 indefinitely." *In re Tornheim,* 181 B.R. 161, 164 (Bankr. S.D.N.Y. 1995). Section 1112(b)(4)(J) provides that a debtor's "failure to file a disclosure statement, or to file or confirm a plan, within the time fixed by this title or by order of the court" indicates cause for conversion of a case under Chapter 11. 11 U.S.C. § 1112(b)(4)(J). In ordinary Chapter 11 cases, the Code declines to specify a fixed time for filing a plan of reorganization, but instead establishes exclusionary periods, which are not deadlines. *See* 11 U.S.C. § 1121; *In re Brooks,* 488

13

B.R. at 490.  Many courts have interpreted this provision, as it relates to customary Chapter 11 cases, as requiring a plan within a reasonable period of time.  *Id.*  "The reasonableness of a period of time should be determined on a case by case basis."  *Id.*

Further, courts have recognized that cause may also be established under § 1112(b)(4)(M) where the record shows that the debtor cannot effectuate a plan of reorganization.  *See* § 1112(b)(4)(M); *see also Hall v. Vance,* 887 F.2d 1041, 1044 (10th Cir. 1989).  The failure to file a plan within a reasonable period time evidences an inability to effectuate such a plan.  *In re Brooks*, 488 B.R. at 490.  A debtor's inability to accomplish substantive progress toward confirmation inherently carries the risk of unreasonable and undue delay, which is nearly always prejudicial toward creditors, and which is adequate, in and of itself, for conversion of a Chapter 11 case.  *See e.g. De Jounghe v. Mender,* 334 B.R. 760, 770-71 (1st Cir. BAP 2005).  Such a finding may also be premised on the practical considerations of the case, and whether the court thinks that a debtor would be able to submit a plan, achieve confirmation and carry it out.  *In re Brooks,* 488 B.R. at 491.

The instant case was filed on April 9, 2018.  As of the date of the hearing, the Trustee has been operating the Debtor for approximately ten (10) months without having proposed a plan.  However, the Court finds that several facts exist that preclude finding that this delay warrants conversion of the case.  First, the parties, including the Trustee,

spent several months in Court ordered mediation attempting to resolve the pending adversary proceedings between the Trustee, Oakley, and the Hughes and their various entities. These matters greatly affect any proposed plan and the outlook of the case in general. As a result, the Court is not inclined to penalize the Trustee for investing time to pursue resolution of these matters. Second, the shutdown of the United States Government from December of 2018 to January of 2019 precluded the United States Trustee from participating in the case during that pending time. Third, there exists a concern as to whether the Trustee, throughout the case, has been granted complete access to the Debtor's records, which were maintained by the Hughes, which is evidenced by the Trustee's Motion for Turnover. (Dkt. No. 123). Lastly, the Court does not find that allowing the Trustee time to propose a plan will prejudice creditors. The only creditors seeking conversion are the Hughes and their various entities. These parties, the Movants, hold more than half of the filed debt in the case; however, the Trustee disputes the validity of these claims.

The Court recognizes that the strained relationship between Oakley and the Hughes creates a unique situation, one whose solution may not ultimately be found in a Chapter 11 reorganization. Conversion, liquidation, and dissolution of the Debtor may be the only viable option. However, the Court, at this time, will not exclude potential solutions by converting the case to Chapter 7, without first allowing the Trustee a

15

reasonable, albeit not unlimited, time to present a Chapter 11 plan, and/or explore possible exit strategies.

## Conclusion

Therefore, in accordance with the foregoing, it is hereby **ORDERED** that the Movants' Motions to Convert to Chapter 7 are **DENIED** without prejudice. It is further

**ORDERED** that the Clerk will serve this Order on the Debtor, the Debtor's attorney, the Chapter 11 Trustee, the Chapter 11 Trustee's Counsel, the U.S. Trustee, Jamie Hughes, Jonathan Hughes, David Hughes, JDH Group, Hughes Company, Inc., all respective Counsel and other parties in interest.

**END OF DOCUMENT**